[No. 1,675.]

# JANE A. CLARK v. THOMAS SAWYER, JOSEPH ISAAC, EDMUND PEPPER, JOHN S. MAYER, ELLEN MAYER, MARY SAWYER, JOHN D. PHILLIPS, SOPHIA M. PHILLIPS, RICHARD DOYLE, MATILDA DOYLE, ROBERT J. TOBIN, AND LOUIS ALTSCHUL.

VENDITIONI EXPONAS.—There is a distinction between cases where a *venditioni exponas* is issued for the sale of personal property, and where it is issued for the sale of land. A *venditioni* issued in the former case must go to the officer who made the seizure.

COURT MAY ORDER VENDITIONI EXPONAS TO ISSUE.—When a sheriff, who levies a *fieri facias* on land, goes out of office before having sold, the Court may, by an order, direct his successor to sell the property levied on, and a *venditioni exponas* may be issued to such successor, and he may then sell and execute a deed to the purchaser.

TO WHOM VENDITIONI EXPONAS IS TO ISSUE.—In cases where a sheriff who has received a *fieri facias*, and made a levy on land, goes out of office without having sold, if a *venditioni exponas* is issued for the enforcement of the lien, no reason is perceived why it must necessarily be executed by the retiring sheriff who made the levy, and not by his successor in office.

TRANSFER OF RECORDS FROM COURTS OF FIRST INSTANCE.—When, in 1850, the Records of the Courts of First Instance in California were transferred to the District Courts, the latter Court possessed as plenary power over the judgments formerly rendered in the Courts of the First Instance as it had over its own judgments.

AUTHORITY OF COURTS OVER PROCESS.—District Courts have jurisdiction to make all necessary orders respecting process issued, or to be issued, on their judgments.

COLLATERAL ATTACK ON ORDER OF COURT.—When a Court makes an order, and it does not appear on the face of the record that the Court did not have jurisdiction to make it, it will be presumed, in a collateral attack, that the parties were before the Court, and that the proper proceedings were had to authorize the Court to make the order.

RECITALS IN SHERIFF'S DEED.—A Sheriff's deed need not recite the judgment and execution under which he acted. It is sufficient if it appear in the deed that the sale was made under the authority of a judgment and execution ; that is, if the deed recites sufficient to show the authority of the Sheriff to sell.

STATUTE REQUIRING RECITALS IN SHERIFF'S DEEDS.—The statute requiring recitals in a Sheriff's deed was not intended to make deeds void which do not contain them, but was only intended to make the recitals evidence of the facts recited; and when such recitals are full, they dispense

with the necessity of introducing the judgment and execution in evidence.

IDEM.—So far as such statute requires recitals beyond what are necessary to show the authority of the officer to sell, it is merely directory.

RECORDS MUST SHOW ERROR.—If a party objects to the introduction of a deed in evidence because neither the deed nor the notary's certificate appeared ever to have been sealed, and the objection is overruled, he must make it appear by the record, not only that they bore no seal when exhibited, but that they were not sealed when executed; for seals may have been placed on them, but become detached.

ERROR.—He who alleges error must make it clearly appear.

PURCHASER OF LAND WITH CONSTRUCTIVE NOTICE OF PRIOR DEED.—If one who buys without paying a valuable consideration, and with notice of a prior unrecorded deed, given by his grantor to another person, records his deed before the record of such prior deed, and, after the record of such prior deed sells to another, who pays a valuable consideration, and buys without actual notice of the prior deed, such last purchaser has constructive notice of the prior deed, and it will take precedence over his own.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

Ejectment to recover a tract of land at the intersection of Mission and Mary streets, being a part of 100-vara lot, 202. The defendants were severally in possession of separate parcels of the demanded premises. The premises were granted by J. W. Geary, Alcalde of San Francisco, to J. J. Bryant, on the 28th day of November, 1849; and Bryant on the 19th day of November, 1853, conveyed them to Clark, by a deed of bargain and sale, which, on its face, purported a consideration of five thousand dollars. There was no proof of the payment of a consideration. This deed was recorded the same day. Clark, on the 16th day of January, 1855, conveyed an undivided one half of the premises to James George, by a deed acknowledged and recorded January 27, 1855.

February 6, 1855, an ante-nuptial marriage contract between Reuben Clark and Jane A. Kelsey was entered into, by which, in consideration of a marriage about to be solemnized between the parties, Clark conveyed to her an undivided one third of his interest in the premises. This marriage was solemnized the next day. Clark afterwards

acquired George's interest in the property, and a partition was made between him and his wife.

The defendants' judgments were for the sums of two thousand three hundred and twenty-nine dollars and ninety-five cents, and one thousand seven hundred and eighty-five dollars.

The defendants had judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion.

*J. P. Treadwell,* for Appellants, argued that the writs should have been executed by the Sheriff of the district, and cited Statute of 1850 (p. 80), section thirty-four; and that the sale was therefore void, and cited *Anthony* v. *Wessel,* 9 Cal. 103, and *People* v. *Boring,* 8 Cal. 406. He also argued that the writ of *venditioni exponas* must be considered by the order as directed to be delivered to the old Sheriff, and that such writ did not confer any new power to sell, but merely prompted a Sheriff to do what he had already begun, and cited *Walsh* v. *Sullivan,* 8 Cal. 165; *Smith* v. *Morse,* 2 Cal. 556. He further argued that the District Court had no power to take away from the old Sheriff the power to sell, and confer it on the incoming Sheriff. He also argued that the Sheriff's deeds were inoperative, because they did not contain the necessary recitals of the judgments on which the sale was made; and cited *Wiseman* v. *McNuldy,* 25 Cal. 230, and *Donahue* v. *McNulty,* 24 Cal. 411.

*Sol. A. Sharp,* for Respondent, argued that the Sheriff did not sell under a writ issued by the Court of First Instance, but under a process issued by the District Court, and that, therefore, section thirty-four of the Act of 1850, did not apply; and cited *Smith* v. *Morse,* 2 Cal. 256. He also argued that the recitals in the Sheriff's deeds were sufficient; and cited, *Secrist* v. *Twitty,* 1 McMullan 255; *Wiley* v. *Robert,* 31 Miss. 212; *Merrit* v. *Clason,* 12 Johns. 102, s. c. 14 Johns. 484; *Harrison* v. *Barnes,* 3 Gill. & Johns. 359; *Baptist Church* v. *Bigelow,* 16 Wend. 28; and *Lee* v. *Mahoney,* 9 Iowa 344. He also argued that the recital in the deed to

Clark, of the payment of five thousand dollars, was no evidence of the payment, and that therefore Clark was not a *bona fide* purchaser; and cited, *Colton* v. *Seavey*, 22 Cal. 496; *Clark* v. *Troy*, 20 Cal. 218; *Moshier* v. *Knox College*, 32 Ill. 155, and *Galland* v. *Jackman*, 26 Cal. 87; and that therefore the Sheriff's deed, having been recorded before Mrs. Clark's purchase, took precedence over her deed.

By the Court, RHODES, J.:

The action was to recover the possession of land in the city of San Francisco. It is admitted that the title of the premises was at one time in one J. J. Bryant, and that the plaintiff had succeeded to that title, unless it had passed to the defendants' grantors by an earlier deraignment.

To establish their title, the defendants put in evidence two judgments in favor of Starkey, Janion & Co. against Bryant, one rendered in March and the other in April, 1850, in the Court of First Instance in the District of San Francisco. They then proved that writs of *fieri facias* were issued upon these judgments and placed in the hands of the then Sheriff of the District of San Francisco, and were levied by him upon the premises, before the 15th day of April, 1850, at which time the Court of First Instance was superseded by the organization of the District Court of the Fourth Judicial District. They further proved that the record of the Starkey, Janion & Co. judgments came into the lawful possession of the Fourth District Court before the 19th day of April, 1850, and that on that day, on motion of the attorney of Starkey, Janion & Co., the Court made an order in the follow words: "*Starkey, Janion & Co.* v. *J. J. Bryant.* Now at this day the Court orders the Sheriff to proceed to sell the property levied on under executions previously issued."

In pursuance of this order, two writs, called writs of *venditioni exponas*, were duly issued out of the Court upon the judgments, and placed in the hands of John C. Hayes, who was the newly elected and qualified Sheriff of the county of San Francisco, in obedience to which, he, on the 3d day of May, 1850, sold the premises to the grantors of the de-

fendants, and in due time gave them Sheriff,s deeds there-
for. These deeds recited the fact, that by virtue of two
writs of *fieri facias*, issued out of the (late) Court of First
Instance in and for the District of San Francisco, in favor
of Starkey, Janion & Co. against J. J. Bryant, directed to
the Sheriff of said District, commanding him to make cer-
tain moneys in the said writs specified; that officer had
made a levy upon the premises; that he had subsequently
made return to the District Court of the Fourth Judicial
District that he had made such levy and seizure, and that
" afterwards by two writs of *venditioni exponas* thereupon
issued in the same causes, by special order of the said Dis-
trict Court to the aforesaid Sheriff of the county of San
Francisco directed, the said Sheriff was ordered and com-
manded to expose the said pieces, parcels and lots of land
above mentioned to sale," and after the other usual recitals,
as to advertisement, etc., proceeded to convey the premises
to the grantees therein "as fully as I, the said John C.
Hayes, the Sheriff aforesaid, can, may, or ought to, by vir-
tue of the said writs and orders, and of the law in such
case made and provided, grant, bargain, sell," etc.

It does not appear at what time the writs of *fieri facias*
were returned to the Fourth District Court, nor why they
were so returned without a sale of the premises levied on,
but it would seem that they must have been returned before
the 19th of April, when the order of that date was made.

When the defendants offered their Sheriff's deeds in
evidence, they were objected to on the ground; first. That
the sales and deeds should have been made by the old
Sheriff of the District of San Francisco, and not by the
new Sheriff of the county; and that, as made, they were
void ; second. That they did not recite the date or amount
of the judgments, or the date of the writs of *fieri facias*, or
the date of the writs of *venditioni exponas;* third. That they
appeared never to have been sealed by the Sheriff. These
objections were overruled, and judgment passed in favor of
the defendants, from which, and from an order denying a
motion for a new trial, this appeal is taken.

1. The question is not whether the old Sheriff might have

retained the writs of *ficri facias*, and under the authority of the thirty-fourth section of the Act of 1850, to supersede certain Courts, made sales thereunder of the property levied on, nor whether having returned these writs to the proper Court, the writs of *venditioni exponas* might have been issued to and executed by him, but whether they must necessarily have been issued to him, and could be executed by no other officer.

The authorities make a distinction between cases where the *venditioni* is issued for the sale of personal property, and where it is issued for the sale of land.  In cases of the former class, the *venditioni* must go to the officer who made the seizure; for by the seizure he acquired a special property in the chattels, and a right to their possession, by virtue of which, it is said, he might sell them without any new command, after the return of the writ, and even after his term of office had expired.  (*Tarkinton* v. *Alexander*, 2 Dev. and Batt., N. C. 87; *Rogers* v. *Darnoby*, 4 B. Monroe, 238.)  In England the *venditioni* goes only for the sale of personal property, and consequently the authorities there are all of this class.

But when an execution is levied on land, the officer making the levy acquires no interest in the land, and is not entitled to its possession.  The levy creates a lien only, which may be enforced by a sale, but until sale and deed, the title and right of possession remain in the execution debtor. When a *venditioni exponas* is issued for the enforcement of this lien, no reason is perceived why it must necessarily be executed by the sheriff who made the levy, and who has gone out of office, and not by his successor.  It is accordingly held by some of the American authorities that the *venditioni* must be executed by the new sheriff.  (*The Bank of Tennessee* v. *Beatty*, 3 Sneed, 305; *Lesley* v. *Gardner*, 3 Watts and Serg. 314); and by others, that it may be executed by either the old or new sheriff.  (*Holmes* v. *McIndor*, 20 Wis. 657; *Sumner* v. *Moore*, 2 McLean, 59; *Tarkinton* v. *Alexander*, 2 Dev. and Batt. 87.)

After the records were transferred from the Court of First Instance to the District Court, the latter Court pos-

sessed as plenary power over the judgments in favor of Starkey, Janion & Co. against Bryant, and the process issued or to be issued thereon, as it could have exercised, had those judgments been rendered in that Court. It is asserted by the plaintiff that the District Court had competent authority to direct and control the Sheriff of the district in the execution of the *fi. fas.* which had been delivered to him, and it is equally clear, we think, that the Court possessed competent jurisdiction to make all necessary and proper orders in respect to process issued or to be issued upon those judgments. Had the Sheriff of the district, while the *fi. fas.* were in his hands, died or left the State, or become for any reason incompetent to act, can there be any doubt that the Court might, by order, have made other provision for the execution of those or other proper writs? If the parties agreed that the writs should be executed by another officer than the Sheriff of the district, or that other writs should be issued upon the judgment, and that they should be executed by the Sheriff of the county, we see no reason to question the validity of an order to that effect made by the District Court. Upon a proper showing that Court had jurisdiction to order such writs to issue as might be necessary for the execution of those judgments, and to direct the Sheriff of the county to execute them. The order of the Court, in evidence in this case, may have been irregular or in some respects erroneous, but as it does not appear upon the face of the record that the Court did not have jurisdiction to make the order, it will be presumed in a collateral attack like the present, that the parties were before the Court, and that the proper proceedings were had to authorize the Court to make the order.

We are of the opinion that the writs in this case were properly executed by the new Sheriff, and that the sale and deeds thereunder were effectual to pass the title, unless they may be impeached for some other reason.

2. It is insisted by counsel for the plaintiff, that the Sheriff's deeds were not made in conformity to the requirements of section two hundred and seven of the Act of April

22, 1850, to regulate proceedings in civil cases, and that the Court erred in admitting them in evidence. That section reads as follows: "The officer who shall sell any real estate, or lease of lands and tenements, for more than one year, shall make to the purchaser a deed, to be paid for by the purchaser, reciting the names of the parties to the execution, the date when issued, the date of the judgment, order or decree, and other particulars as recited in the execution; also a description of the property, the time, place and manner of sale, which recital shall be received as evidence of the facts therein recited." The general rule is that a sheriff's deed need not recite the judgment and execution. It is sufficient if it appear that they were the authority under which he acted. (*Blood* v. *Light,* 38 Cal. 649; *Averill* v. *Wilson,* 4 Barb. 280; *Jackson* v. *Jones,* 9 Cow. 182.) When title is to be established through a Sheriff's deed, the judgment and execution must be introduced in evidence with the deed. This statute makes the recitals evidence of the facts recited, and when the recitals are full, dispenses with the necessity of introducing the judgment and execution. This, we think, was its only purpose and effect. It could not have been intended to make void all deeds from which were omitted some of the recitals named. Precisely the same question, under a statute which differs from the one invoked here only in two unimportant words, was presented to the Supreme Court of Arkansas in *Jordan* v. *Bradshaw,* and again in *Bettison* v. *Budd,* 17 Ark. 106 and 546, and it was held that a Sheriff's deed, which failed to recite the judgment, was admissible in evidence, upon proof of the judgment and execution *aliunde*

In the last named case, the Court said: "The statute requires that the deed shall recite the names of the parties to the execution, the date when issued, the date of the judgment, order, or decree, and other particulars recited in the execution; also, a description of the time, place, and manner of sale, and further declares that such recitals shall be received in evidence of the facts therein contained. The obvious intention of this statute was to save the purchaser from the necessity of exhibiting the judgment and

execution upon the trial, in cases where his rights under such judgment and execution might be called in question, and also to serve as a matter of convenience, as well to the Sheriff as to the purchaser, as it would point the former to his authority to sell if he was called on to answer, and would facilitate the latter in deriving his title. The recitals of the deed in this case fall short of the statute, yet it was competent evidence in connection with the judgment and execution, since it recited sufficient to show the authority of the officer to sell." The Court then quotes the following language from the *Lessor of Perkins* v. *Diffle* (10 Ohio, 437): "The law regulating judgments and executions requires that the deed of conveyance, to be made by the Sheriff or other officer, shall recite the execution, or the substance thereof, and the names of the parties, the kind of action, the amount and date of the term of rendition of each judgment, by virtue whereof said lands and tenements were sold," etc. The deed in the present case recites the execution, the names of the parties, as therein stated, but in reference to the judgment does not again recite their names—neither does it state the amount of the judgment, except as it appears upon the execution. It recites sufficient to show that the officer had authority to sell; and this we hold to be all that is necessary—although in every instance it would be well for a Sheriff or other officer to follow literally the provisions of the statute. So far as the statute makes provision for any recitals, beyond what is necessary to show an authority to sell, we consider it as directory merely.

3. The case shows that when the deeds were produced in evidence—more than sixteen years after they were made—they bore no seals, but it fails to show whether they were, or were not, in fact sealed, at the time they were made. They purported to have been sealed, for they closed with the words: "In witness whereof, I, the said John C. Hayes, Sheriff, have hereunto set my hand and seal," etc., and were "signed, sealed and delivered in the presence of" a subscribing witness. The objection was that they "appeared never to have been sealed by the said Hayes." This objection was overruled, and, so far as we can know from the re-

cord, properly. Upon inspection, it may have appeared to the Court that the deeds were sealed, and that the seals had become detached.

The further objection to two of the deeds that the certificates of acknowledgment which purported to have been made by a Notary Public, " do not appear to bear his official or other seal," may be answered in the same way. Though they bore no official or other seal when exhibited in evidence, it may have been clear that they were properly sealed when made. The objection is met by the rule that he who alleges error, must make it clearly to appear.

4. The point is made that the plaintiff is entitled to recover a portion of the demanded premises, upon the ground that, being a purchaser in good faith, and for a valuable consideration, the conveyance to her will prevail, under the Registry Act, over the prior conveyance by the Sheriff. The point is made upon the following facts: Two of the Sheriff's deeds were not recorded until the 22d of November, 1853. On the 19th day of the same month, J. J. Bryant, for the expressed consideration of five thousand dollars, conveyed to one Reuben Clark, who afterwards became the husband of the plaintiff, the whole of the demanded premises, and his deed was duly recorded on the same day. It does not appear, however, that Clark took his deed without notice of the unrecorded Sheriff's deeds, or that he paid any valuable consideration for it. In April, 1855, after the plaintiff had become the wife of Clark, and in fulfillment of an ante-nuptial contract so to do, and in consideration thereof, Clark conveyed to the plaintiff the premises in controversy, and her deed was acknowledged and in due time placed of record. The plaintiff, being a witness in her own behalf, testified that she had never heard of any adverse claim to the land in controversy, until after the delivery to her, and the recording of her deed. Upon these facts it is claimed that, because the deed to Clark was recorded before the Sheriff's deeds, the record of the latter did not impart notice of their contents to purchasers from Clark, and that, if he was not a purchaser in good faith, and for a valuable consideration, still that his

grantee, who took without notice and for a valuable consid-
eration, would take a good title.   In *Mahoney* v. *Middleton*,
41 Cal. 41, the same question was presented, and the ruling
was adverse to the views now urged by the appellant.   We
see no reason for changing the ruling here.   The other
points do not require special notice.

In our opinion the judgment and order should be
affirmed, and it is so ordered.

Mr. Justice CROCKETT, being disqualified, took no part in
the decision.