90   25
115  251
90   25
123  697

[No. 13319.   Department One. — June 30, 1891.]

# C. W. M. SMITH, RESPONDENT, v. GEORGE O. DAVIS ET AL., APPELLANTS.

TRUST DEED — LAND OUT OF STATE — REFUSAL OF TRUSTEE TO ACT — APPOINTMENT OF NEW TRUSTEE — JURISDICTION. — Where a trust deed respecting land in another state, made and executed in this state, provides that if the trustee named therein should fail or refuse to accept the trust a new trustee may be appointed by a court of competent jurisdiction, a court of this state which acquires jurisdiction of the parties may appoint a new trustee to carry out the trust, where the trustee named in the deed refuses to act.

ID. — VALIDITY OF DEED — ASSENT OF TRUSTEE — INCOMPETENCY — EN-
FORCEMENT OF TRUST IN EQUITY. — The assent of the trustee is not
necessary to the validity of a trust deed; and the fact that the trustee
named in the deed is not competent to act does not render the trust
void as between the parties thereto, but a court of competent jurisdic-
tion may substitute a new trustee to enforce and perfect the objects of
the trust.

ID. — SIGNATURE OF TRUSTEE. — The fact that the trust deed was not
signed by the trustee, although it was intended to be signed by him,
does not render it defective, if it was signed by the other parties thereto,
under an express agreement that it should be binding as between them.

ID. — ACTION TO APPOINT NEW TRUSTEE AND TO ENFORCE TRUST — PAR-
TIES — TRANSFER OF PROPERTY. — Where one of the parties to the trust
deed, who was made a party defendant in an action to appoint a new
trustee and to enforce the trust, transferred all his interest in the land
to a third person after the execution of the deed, and after the com-
plaint was filed, he cannot complain that the third person was not made
a party to the action, if he did not ask to have him joined as a party.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco.

The facts are stated in the opinion of the court.

*James G. Maguire,* and *Whittemore & Sears,* for Appel-
lants.

The court had no jurisdiction or authority to appoint
or constitute a trustee of land lying outside of the terri-
torial limits of the state of California. (Story on Con-
flict of Laws, secs. 551–556; *Public Works* v. *Columbia
College,* 17 Wall. 521; *Watts* v. *Waddle,* 6 Pet. 389; *Brine*
v. *Insurance Co.,* 96 U. S. 627, 635; *Davis* v. *Headley,*
22 N. J. Eq. 115, 121; *Nelson* v. *Potter,* 50 N. J. L. 324;
*Lindley* v. *O'Reilly,* 50 N. J. L. 636; *Wimer* v. *Wimer,*
82 Va. 890; *Dodge* v. *Colby,* 108 N. Y. 445; *Rafael* v.
*Develst,* 2 W. Black. 1058; *Haggerty* v. *Amory,* 7 Allen,
459; *Wilson* v. *Martin Wilson A. F. A. Co.,* 149 Mass. 24;
Freeman on Judgments, 3d ed., sec. 605, and see note 2;
secs. 564–572; Rorer on Interstate Law, c. 21, p. 207.)
The judgment of the court below, being void for want
of jurisdiction, cannot be affirmed, even if it correctly
determine the issues; and the objection to the juris-

diction of the trial court may be made for the first time
on appeal. (Code Civ. Proc., sec. 434; *Hentsch* v. *Porter*,
10 Cal. 561; *Haskell* v. *Moore*, 29 Cal. 437; *People ex rel.
Carillo* v. *De la Guerra*, 24 Cal. 78.)  The complaint does
not state facts sufficient to constitute a cause of action,
even if the subject-matter were within the jurisdiction
of the court, as it shows affirmatively that the so-called
indenture upon which the suit was brought was intended
to be signed by three parties, and was signed by only
two, and was therefore void. (*Tewksbury* v. *O'Connell*,
21 Cal. 60; *Barber* v. *Burrows*, 51 Cal. 404; *Emeric* v.
*Alvarado*, 64 Cal. 577, 578.)  It shows affirmatively that
by said "indenture" the parties intended to create a
trust in real property; that no person (capable of taking)
was named as trustee therein, and said "indenture" was
therefore void. (*Goss* v. *Singleton*, 2 Head, 67; *Beekman*
v. *Bonsor*, 23 N. Y. 298.)  Mrs. McDonald was an indis-
pensable party to this suit, and should have been joined,
because at the time of the trial thereof, and for more
than two years prior thereto, she was the owner of the
lands in question under a deed from defendant Davis,
and at the time of her purchase she had notice of the
execution and delivery of said so-called indenture tri-
partite, and she had no notice, either actual or construct-
ive, of the commencement of this suit. (*Robinson* v.
*Gleason*, 53 Cal. 38; *Lucas* v. *Payne*, 7 Cal. 92; *Carpentier*
v. *Williamson*, 25 Cal. 154; *Jenkins* v. *Frink*, 30 Cal. 586;
*Marks* v. *Marsh*, 9 Cal. 96; *Wilson* v. *Lassen*, 5 Cal. 114;
*Wingard* v. *Banning*, 39 Cal. 543; *Heyman* v. *Lowell*, 23
Cal. 106.)

*James L. Crittenden*, for Respondent.

The court had jurisdiction over the parties, and over
the indenture or agreement made between them, and
having as a court of equity acquired such jurisdiction,
it could grant full relief. (*Massie* v. *Watts*, 6 Cranch,
158–160; *Dickinson* v. *Hoomes*, 8 Gratt. 410–412; *Far-*

ley v. *Shippen*, Wythe, 254--265; *Mitchell* v. *Bunch*, 2
Paige, 615; *Mead* v. *Merritt*, 2 Paige, 404; *Guerrant* v.
*Fowler*, 1 Hen. & M. 5; *Morris* v. *Remington*, 1 Pars. Cas.
392, 393; *Penn* v. *Lord Baltimore*, 2 White and Tudor's
Lead. Cas. Eq. 1806–1832, and numerous cases cited;
Story's Eq. Jur., secs. 1290–1300; *Poindexter* v. *Burwell*,
82 Va. 507; *Barger* v. *Buckland*, 28 Gratt. 850.) The in-
strument set forth in the complaint and signed by the
parties plaintiff and defendant was certainly good as a
contract. (See Civ. Code, secs. 1549, 1550.) Trusts never
fail in equity for want of a trustee; the court will always
appoint a trustee. (Story's Eq. Jur., secs. 1058–1061.)
Mrs. McDonald, not having any interest in the property
at the time the action was commenced, is not a neces-
sary party because of having subsequently acquired an
interest. (*Horn* v. *Jones*, 28 Cal. 194.)

GAROUTTE, J. — Respondent filed his complaint in
equity to appoint a trustee, and to have the execution of
a trust relating to certain lands in Washington Terri-
tory decreed.

The complaint, filed May 23, 1885, alleges that on July
27, 1881, said Smith and Davis executed and delivered
each to the other a certain document, purporting to be
an "indenture tripartite," whereby they purported to
convey said land to the London and San Francisco Bank,
Limited (a corporation), in trust, for certain specified
purposes; that by the terms of its charter said bank
was incapable of taking the title sought to be conveyed
by the indenture, and was without power to act as trus-
tee in the indenture specified; that defendant Davis re-
fused to regard and carry out the conditions of the
indenture, and plaintiff asks that the court appoint a
trustee, and that the said trustee be directed to execute
the trusts therein contained.

Defendants filed a general demurrer, which was over-
ruled, when defendant Davis answered, setting out,

among other things, that after the filing of the complaint in this action he sold and transferred all his interest and right in the land described to one Margaret H. McDonald, and that since that time he has had no interest in and to said real estate.

The defendant bank answered that it had no legal capacity to take the title sought to be conveyed, never consented to act as trustee, and refused so to act.

The findings of the court are in consonance with the allegations of the complaint; and the court also found that defendant Davis had transferred his interest as set forth in his answer.

This appeal is from the judgment appointing a trustee, and directing an execution of the trust.

Appellant insists that the court had no jurisdiction or authority to appoint or constitute a trustee of land lying outside of the terrritorial limits of the state of California.

There is no question as to the general principle of law that in respect to realty every attempt of any foreign tribunal to found a jurisdiction over it must, from the very nature of the case, be utterly nugatory; for land is held by the laws of the country where it is situated, and the tribunals administering those laws are the proper forums in which titles to realty should be litigated. The effect of a court's decree is necessarily limited by the boundary lines of its jurisdiction.

In the case of *Lindley* v. *O'Reilly,* 50 N. J. L. 636, where a court of Pennsylvania adjudged a conveyance of land in New Jersey to be a mortgage, and canceled the same, all the parties living in Pennsylvania, the court said: " The decree cannot operate *ex proprio vigore* upon the lands in another jurisdiction to create, transfer, or vest a title. The courts of one state or country are without jurisdiction over title to lands in another state or country." While the rule is as above stated, yet there is another rule firmly established and of uni-

versal application, and it is: "In cases of fraud, trust, or
contract, the jurisdiction of a court of chancery is up-
held wherever the person be found, although lands in
another state may be affected by the decree." In the case
of *Massie* v. *Watts*, 6 Cranch, 158, Chief Justice Marshall
said: "Was this cause therefore to be considered as in-
volving a naked question of title,—was it, for example, a
contest between Watts and Powell,— the jurisdiction of
the circuit court of Kentucky would not be sustained.
But where the question changes its character, where the
defendant in the original action is liable to the plaintiff
either in consequence of contract, or as trustee, or as the
holder of the legal title acquired by any species of *mala
fides* practiced on the plaintiff, the principles of equity
give a court jurisdiction wherever the person may be
found. And the circumstance that a question of title
may be involved in the inquiry, and may even consti-
tute the essential point on which the case depends, does
not seem sufficient to arrest that jurisdiction."

In *Wimer* v. *Wimer*, 82 Va. 901, we find this language
of the court: "But whilst this is true, it is undoubtedly
well settled that in cases of fraud, trust, or contract,
courts of equity will, whenever jurisdiction over the
parties has been acquired, administer full relief, without
regard to the nature or situation of the property in
which the controversy had its origin, and even where
the relief sought consists in a decree for the conveyance
of property which lies beyond the control of the court,
provided it can be reached by the exercise of its powers
over the person, and the relief asked is of such nature
as the court is capable of administering."

Story quotes the following language of Lord Kenyon,
used in a case pending before him: "These cases clearly
showing that with regard to any contract made in
equity between persons in this country respecting lands
in a foreign country, particularly in the British domin-
ion, this court will hold the same jurisdiction as if they

were situated in England." (Story's Eq. Jur., sec. 1293.) Referring to trusts, Story says: "If the proper parties are within the reach of the process of the court, it will be sufficient to justify the assertion of full jurisdiction over the subject in controversy."

*Barger* v. *Buckland*, 28 Gratt. 850, was a suit of creditors to subject to the payment of their claim lands of their debtor situate in Virginia and West Virginia, which lands had been conveyed, in trust, to secure other debts. The trust was created in Virginia, the parties resided in Virginia, except the trustee, who resided in West Virginia, and who neglected or refused to carry out the trust.

In *Poindexter* v. *Burrell*, 82 Va. 514, the court, in reviewing the decision in *Barger* v. *Buckland*, 28 Gratt. 850, says: "Upon default of payment, there being no trustee to execute the contract of the parties to sell the land and pay the debt, under the circumstances the court, in order to perform the contract of the parties, and to fulfill its own maxim that a trust shall not fail for want of a trustee, decreed that unless the grantor should pay the debt within a prescribed period, then certain named persons should execute the trust by selling the land and applying the proceeds to the payment of the debt."

Upon principle, this case appears to be identical with the case at bar. If the London and San Francisco Bank had been competent to accept the trust, and had accepted it, and this plaintiff was here asking that the trustee execute the trust, there is no question but what a decree to that extent would be sustained by this court, for the authorities are universal to that effect.

If the court has the power and if it is its duty to execute the trust, can it be deprived of that power and released from that duty because there is no trustee to carry out the mandate of the court? or rather, is it not specially within the line of its duty to create an instru-

ment whereby its decree may effect the true purpose and object intended?

The decrees of courts of equity primarily and properly act *in personam*, and at most collaterally only *in rem*.

If the parties are within the jurisdiction of the court, an injunction will be granted to stay proceedings in a suit in a foreign country.

A trust will be enforced pertaining to realty, regardless of the situation of the property.

Courts of equity have, as between the parties, reviewed the judgments of foreign courts, and even sales made under those judgments, when fraud or undue advantage was shown.

A specific performance of a contract of sale of lands situated in a foreign country will be decreed in equity.

These actions will be supported where the court has jurisdiction of the parties, and are familiar illustrations found in Story's Equity Jurisprudence, sections 1290 et seq.

A decree to convey land lying in another state does not affect the title; it only operates upon the person who is to make the conveyance, and it is his act in making the deed that affects the title.

This deed of trust was made and executed in San Francisco, California, by the plaintiff and defendant Davis, and was recorded in King County, Washington Territory. It expressly provided that " the trusts hereby created shall not lapse or become void by reason of the failure or refusal of the party of the third part to accept or carry out the same"; and further provided that a new trustee should be appointed by the mutual consent of the parties, or by a court of competent jurisdiction, upon the happening of any of the foregoing contingencies. It is further provided that all the conditions and provisions of this agreement " shall apply to and be binding upon their heirs, . . . . or any other trustee that may be appointed in its place or stead."

The defendant bank under its charter could not take the title to the realty, but the parties of the first and second part expressly guarded against such contingency defeating the trust provisions of the indenture by covenanting that, notwithstanding the happening of such event, the indenture should still remain in full force and effect as between themselves, and that a new trustee should be appointed to carry out the trusts, and that all the provisions and conditions of the agreement should apply to and be binding upon such trustee.

There can be no question but that this indenture is still alive and in full force and effect as between the plaintiff and defendant Davis, for they expressly provided that such should be the fact.

Upon a careful reading of the decree of the court, we find it simply appoints a trustee and commands him to enforce the trust; there is nothing contained therein purporting or attempting to transfer title to or vest title in the trustee appointed by the court.

If title to the Washington Territory realty does not vest in the trustee, then appellant is not injured, and his contention has no support; if the title to this realty does vest in the trustee, it must be by operation of law or by virtue of the contract of the parties, for the decree does not so provide, and does not purport *ex proprio vigore* to vest a title in the trustee, Brittan.

In this case the trust did not fail as between the parties by reason of the incapacity and refusal of the original trustee to act.

"The assent of the trustee is not necessary to the validity of the trust deed. He may refuse to act, be unable to comply with the statute, or, die, and in such or similar cases a court of chancery will execute it." (*Freeman* v. *Fisher*, 4 Cold. 630; *Field* v. *Arrowsmith*, 39 Am. Dec. 185, and note; Flint on Trusts and Trustees, sec. 132.)

In *Vidal* v. *Girard's Ex'rs*, 2 How. 188, Justice Story

said: " It is true that if the trust be repugnant to or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be compellable to execute it, but that will furnish no ground to declare the trust itself void, if otherwise unexceptionable; but it will simply require a new trustee to be substituted by the proper court possessing equity jurisdiction to enforce and perform the object of the trust." This will be sufficiently obvious upon an examination of the authorities, but a single case may suffice. In *Sonley* v. *Clockmakers' Company*, 1 Brown Ch. 81, there was a devise of freehold estate to the testator's wife for life, with remainder to his brother C. in tail male, with remainder to the Clockmakers' Company, in trust, to sell for the benefit of testator's nephews and nieces. The devise, being to a corporation, was by the English statute of wills void, that statute prohibiting devises to corporations, and the question was, whether, the devise being so void, the heir at law took beneficially or subject to the trust. Mr. Baron Eyre, in his judgment, said "that 'although the devise to the corporation be void at law, yet the trust is sufficiently created to fasten itself upon any estate the law may raise.' This is the ground upon which courts of equity have decreed in cases where no trustee is named."

The objection to the complaint that it is fatally defective in this, that it shows affirmatively that the indenture or deed of trust was intended to be signed by three parties, and was signed by only two, cannot be sustained.

The signature of the party of the third part formed no element of the consideration for the signature of the other two parties, and they expressly agreed that the indenture should be binding as between them, regardless of the third party.

The appellant insists that the judgment should be reversed, because Margaret H. McDonald is not made a party defendant in this action.

If said Margaret was a resident of the state of California when the answer was filed, we are at a loss to understand why she was not joined as a co-defendant, either upon the application of one of the parties, or upon motion of the court.

In order for appellant to successfully maintain his position, he must show affirmative error; and in this case he has not shown by the record that she was a resident of the state of California, and therefore that the court had the power to order her joined as a defendant.

We are not called upon to determine to what extent Margaret H. McDonald's interests have been adjudicated in this action. Respondent's position is, that owing to the fact that she had notice of the recordation of the indenture in Washington Territory, and also purchased the land from appellant after the commencement of this action, that therefore she is bound in all respects by the judgment, to the same extent as if she were a party defendant.

In this action no *lis pendens* was filed; indeed, it is quite difficult to see how or where one could have been filed, to have had any vitality or effect.

In this state the act of filing a complaint is no notice to the world of the matters contained therein; and said Margaret having no actual or constructive notice of the proceedings at the time she purchased the realty, it is difficult to discern how she is in any worse position by reason of having purchased after the filing of the complaint, than if she had purchased prior to that event.

Again, the fact that she purchased with notice of the indenture of trust did not give the trial court the right or jurisdiction to litigate her title to the land. Appellant, in making a deed to her, undoubtedly repudiated the entire theory of trust, and she probably bought and now holds in hostility to the trust; the question of her title is a matter to be hereafter considered in *locus rei sitæ*.

But aside from all these considerations, how is the defendant injured by the fact of not having the company of this lady as a co-defendant during the progress of the litigation? and if her company, aid, and assistance were necessary to the best welfare of his interests in the cause, why did he not ask the court to have her joined with him?

The court is expressly authorized by statute to make such order in a proper case. What is appellant's cause of complaint? If he has no interest in the subject-matter of this litigation, why did he not file a disclaimer in the lower court, and thus rid himself of the vexations of the law, and thereby escape a judgment against him for costs?

If he has any interests which are affected by the judgment in this cause, he has had his day in court, and was held to be in the wrong. Why should he demand a new trial because a new third party had interests which were not litigated? If the plaintiff has secured a judgment against the wrong party, he has done an idle thing, and his sins rest on his own head.

We think the appellant should not be heard to insist upon a reversal of the judgment upon the last ground considered.

Let the judgment be affirmed.

HARRISON, J., and BEATTY, C. J., concurred.